[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15716
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00264-RS-GRJ


TAMMY SLAY,

Plaintiff-Appellant,


versus

GLENN HESS,
In his official capacity as State Attorney
Fourteenth Judicial Circuit Florida,
GREG WILSON,
Individually,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 27, 2015)

Before ED CARNES, Chief Judge, HULL and ROSENBAUM, Circuit Judges.

PER CURIAM:

Tammy Slay appeals the Rule 12(b)(6) dismissal of her amended complaint for failure to state a 42 U.S.C. § 1983 First Amendment retaliation claim. Slay contends that she was discharged from her job at the Florida State Attorney's Office because she complained about being required to falsely report on her time sheets that she spent 100% of her time working on a particular grant.

Slay worked as a Victim Advocate for the State Attorney's Office in the Chipley, Florida office from March 1997 until October 31, 2013.[1] That office is part of Florida's 14th Judicial Circuit and is located in Washington County. In November 2012, Slay received an email that was sent to all of the Victim Advocates in the 14th Judicial Circuit, "informing them that their timesheets needed to reflect 100% time spent on the VOCA grant."[2] Slay "refused to do this since she was not spending 100% of her time on the grant," and she later discovered that "Melanie Ditty from the Marianna business office . . . was writing on her timesheet."[3]

---

[1] We take these facts from Slay's amended complaint, accept them as true, and construe them in the light most favorable to her for the purposes of this appeal from a Rule 12(b)(6) dismissal. See Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

[2] Slay does not state what the "VOCA grant" was.

[3] Slay does not state what Ditty was writing on her timesheet.

2

"[A]fter months of not claiming 100% time spent on the VOCA grant," Ditty sent Slay an email on March 27, 2013, "requesting that [Slay] again certify that she had spent 100% of her time on the VOCA grant."  Slay responded by email that same day, "regarding her concerns about being asked to falsify her time sheets yet again," and she asked to speak to Chief Assistant State Attorney Greg Wilson "about the issue."  Slay and Wilson spoke on the phone on April 2, 2013, and during that conversation Slay "discussed concerns [about] being asked to falsely represent the amount of time she spent working on the VOCA grant."  Wilson stated that "perhaps Washington County did not really warrant a full time Victim Advocate."

According to Slay, "after several more months of indicating on her time sheets that she was working only 75% on the VOCA grant," she was told that her position was being eliminated.  She was also told that she could take a new position as a Victim Advocate in Bay County, which would have been for her a 1.5-hour drive each way, or she could stay in Washington County as a receptionist with a $7,000 pay cut.  Slay states that "she had no choice but to resign."  Her employment ended on October 31, 2013, nearly seven months after her conversation with Wilson and her complaints about falsifying time sheets.  After Slay resigned, another Victim Advocate was hired in Washington County to replace her.  Slay asserts:  "At no time was it [her] job or within her job duties to

3

report misspending and/or the improper allocation of wages under the grant and in so objecting, she was acting as a private citizen and not as an employee of the Office of the State Attorney."

Slay filed a lawsuit in Florida state court against Wilson and Glenn Hess, State Attorney for the Fourteenth Judicial Circuit, alleging that they had retaliated against her for exercising her First Amendment rights.[4]  Wilson and Hess removed the case to federal district court and then moved to dismiss Slay's amended complaint.  The district court granted that motion.  We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga., 708 F.3d 1243, 1252 (11th Cir. 2013).

The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006).  The Court explained in Garcetti:

> When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job

---

[4] Slay's initial complaint also alleged a violation of the Florida Whistleblower Act, but she did not include that state law claim in her amended complaint, which is the operative one for purposes of this appeal.

4

duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.

Id. at 423, 126 S. Ct. at 1961.  Slay does not dispute that filling out time sheets was part of her official duties as an employee of the State Attorney's Office.   She states in her brief to this Court, "While keeping her time may have been a function of being an employee, it was not the reason why [her] job existed."  She admits that "she had to submit timesheets to account for the work she accomplished."  She argues, however, that "filling out timesheets was not her job, her job was to serve as a victim advocate."  A duty does not have to be the reason a job existed or the primary purpose of the job to be part of an employee's official job duties.

Slay's internal complaints about how her time was allotted on the time sheets — even accusations that her supervisors were falsely allotting that time — did not remove her time sheet responsibilities from the normal course of her job duties and transform her complaints into constitutionally protected speech. See Morris v. Crow, 142 F.3d 1379, 1382 (11th Cir. 1998) (concluding that an accident report written in the normal course of an investigator's job duties was not protected speech even though it contained information unfavorable to the sheriff's department).   In complaining to her superiors at work about how time was allotted, she was speaking as an employee, and when a government employee speaks as an employee "there can be no First Amendment issue, and the

5

constitutional inquiry ends." Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007); see also Abdur-Rahman v. Walker, 567 F.3d 1278, 1283 (11th Cir. 2009) (holding that "the reports of the inspectors to their supervisors about sewer overflows they were required to investigate are not protected under the First Amendment").

Slay does not dispute those principles, but she argues that the Supreme Court's decision in Lane v. Franks, — U.S. —, 134 S. Ct. 2369 (2014), broadened the scope of citizen speech. She asserts that her speech was protected under Lane even if it did "relate to" her job duties. Lane held that a public employee's sworn testimony, which was compelled by subpoena and given outside of the course of his ordinary job duties, was protected by the First Amendment even though the testimony concerned information about public corruption that he had discovered during the course of his job. See id. at 2378.

The Lane opinion noted: "[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech. The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. at 2379. Slay made an internal complaint about internal recordkeeping. Her circumstances are far removed from the facts of Lane, because complaints to superiors in the workplace

6

are not the same as subpoenaed grand jury and trial testimony. Neither the holding nor the reasoning of Lane extends as far as Slay would stretch it.

When Slay complained to her superiors that she was being required to falsely allot her time on her time sheets, she was performing her official duties as an employee and was speaking as an employee and not as a citizen. "Speech that owes its existence to the official duties of public employees is not citizen speech even if those duties can be described so narrowly as not to mandate the act of speaking." Abdur-Rahman, 567 F.3d at 1285. Slay's amended complaint fails to state a First Amendment retaliation claim.

**AFFIRMED.**

7